IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

CAROLEE LANCE, TRUSTEE,　　　　　)
ROSEMONT RESIDENCE TRUST,　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　)　　TC-MD 160020N
　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
HOOD RIVER COUNTY ASSESSOR,　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　)　　**FINAL DECISION**[1]

Plaintiff appeals the disqualification of Tax Lot 100[2] (subject property) from forestland

special assessment for the 2015-16 tax year.  During a case management conference held on

March 17, 2016, the parties agreed that the only issue is whether the subject property was held in

common ownership[3] with Tax Lot 400 and, therefore, met the minimum stocking requirements[4]

for forestland special assessment for the 2015-16 tax year.  Plaintiff argues that ownership means

common legal and equitable ownership.  Defendant argues that ownership means record owner

of title.  The matter came before the court on the parties' cross-motions for summary judgment.

## I.  STATEMENT OF FACTS

In this case, there are no disputed facts.  (Def's Resp Br at 1.)  Originally, Robert Kent

Rosemont owned both the subject property and Tax Lot 400, which were part of a group of four

---

[1] This Final Decision incorporates without change the court's Decision, entered September 8, 2016.  The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered.  *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

[2] Tax Lot No 6033, 3N 10 33A 100.

[3] OAR 150-321.358(4)(3) uses the term "one ownership."

[4] More specifically, minimum acreage requirements.  *See* ORS 321.358(4)(b) (authorizing the department to adopt acreage requirements for designated forestland); OAR 150-321.358(4)(3) (requiring that forestland "designated area must be at least two contiguous acres in one ownership.")

contiguous parcels[5] designated as forestland pursuant to OAR 150-321.358(4). (*Id.*) The subject property consists of approximately 1.03 acres. (*Id.*) Tax Lot 400 is 7.3 acres. (*Id.*) Together, those two parcels are approximately 8.33 acres. The fact that those two parcels are contiguous is uncontested.

After Robert Kent Rosemont's death, the properties were conveyed to different individuals and entities. (Def's Resp Br at 3.) Tax Lot 400[6] was conveyed to Carolee A. Lance, Claudia K. Rosemont, and Ramona M. Rosemont Gibbs, who in turn, conveyed that same property to RK Rosemont LLC. (*Id.* at 2-3.) That first conveyance was recorded on April 14, 2014, and the second conveyance was recorded on June 9, 2014. (*Id.*) The subject property was conveyed to Carolee A. Lance, Trustee of the Rosemont Residence Trust, and was recorded on April 14, 2014. (Compl, Ex 4 at 1-2.) The remainder beneficiaries of that trust were Carolee A. Lance, Claudia Kathleen Rosemont, and Ramona Marie Rosemont Gibbs. (Compl, Ex 8 at 6.) On June 2, 2014, by a signed and notarized instrument, Carolee A. Lance, Claudia Kathleen Rosemont, and Ramona Marie Rosemont "assign[ed] over to RK Rosemont LLC all of their beneficial right, title, and interest in the Rosemont Residence Trust." (Compl, Ex 7 at 1-2.) The beneficiaries did not immediately record the transfer because their interests were still subject to a right of occupancy held by the grantor's surviving spouse.[7] (Compl at 6.) Their intent was to transfer the title and their future interests to the RK Rosemont LLC. (*Id.*)

/ / /

---

[5] Tax Lot 300 was conveyed to Marjorie Rosemont but is not at issue in this appeal. (Def's Resp Br at 2.)

[6] Tax Lot 200 and 400 were conveyed to the same individuals and entity, and on the same dates, but Tax Lot 200 is not at issue in this appeal. (*Id.* at 2-3.)

[7] Robert Kent Rosemont's will left all his property outright to his children, but provided that his wife, Marjorie Rosemont, had a right to reside rent free in the subject property. In order to effectuate his intent, the probate court created the Rosemont Residence Trust to ensure that Marjorie Rosemont would be able to reside in the subject property. The trust was to terminate at her death, or by her failure to reside in the subject property for more than 270 days, at which point the subject property passed to their children outright. (*See* Compl, Exhibit 8 at 2.)

The Rosemont Residence Trust terminated in December 2014, and legal and equitable title to the subject property merged and vested in RK Rosemont LLC.[8] (Def's Resp Br at 6.) The transfer to RK Rosemont LLC was not recorded with the county until February 10, 2016. (*Id.* at Ex I.)

Defendant did not offer any evidence that it disqualified the subject property from forestland special assessment during 2014. Defendant notified Plaintiff in a letter, dated June 11, 2015, that the subject property had been disqualified from forestland special assessment for the 2015-16 tax year because it "d[id] not meet the minimum stocking requirements for forestland special assessment." (Compl, Ex 10.) On June 11, 2015, Defendant's records showed that the record owner of Tax Lot 400 was different than the record owner of the subject property. Per Defendant's records, RK Rosemont LLC owned Tax Lot 400 as of January 1, 2015, whereas Carolee A. Lance, Trustee of the Rosemont Residence Trust, owned the subject property. (Def's Resp Br at 2-3.)

## II. ANALYSIS

A. *Burden of Proof; Summary Judgment*

"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427.[9] "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). Summary judgment is proper where, construing the facts in the light most favorable to the adverse party, "there is no genuine issue as

---

[8] In December 2014, Marjorie Rosemont moved out of the subject property with no intent to return and the trust terminated. (Ptf's Br at 1-2, Apr 18, 2016.)

[9] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

to any material fact" such that "the moving party is entitled to prevail as a matter of law." Tax Court Rule (TCR) 47 C.

B.      *Whether the Disqualification of the Subject Property from Forestland Special Assessment for the 2015-16 Tax Year was in Error*

"When land has once been designated as forestland * * * it shall be valued as such until the assessor removes the forestland designation * * *." ORS 321.359(1)(a). "The county assessor shall remove the forestland designation upon * * * [d]iscovery by the assessor that the land is no longer forestland * * *." ORS 321.359(1)(b),(C). "The county assessor shall not find land properly classifiable as forestland if * * * the land does not substantially meet minimum stocking or acreage requirements under rules adopted by the department." ORS 321.358(4)(b). The department's administrative rule provides that, "[t]o qualify, the area to be designated must be at least two contiguous acres in one ownership." OAR 150-321.358(4)(3). The subject property is only 1.03 acres, thus it does not meet the minimum acreage requirement unless it was held "in one ownership" with Tax Lot 400.

1.      *Whether ownership means legal ownership or record ownership*

The parties disagree as to the meaning of "ownership" in the rule.[10] *See* OAR 150-321.358(4)(3). Plaintiff argues that ownership means legal and equitable ownership. (Ptf's Br at 3, Apr 18, 2016.) Defendant argues that ownership means "the record owner of title." (Def's Resp Br at 7.) It is undisputed that RK Rosemont LLC held both legal and equitable title to the subject property upon termination of the Rosemont Residence Trust in December 2014. (Ptf's Br at 1-2, Apr 18, 2016; Def's Resp Br at 6.)

---

[10] The parties agree that the plain meaning of "one," as found in *Webster's Dictionary*, is "a single person or thing." (Ptf's Br at 2, Apr 18, 2016; Def's Resp Br at 5.)

In construing an administrative rule, the court must "determine the meaning of words used, giving effect to the intent" expressed by the department in adopting the rule. *Abu-Adas v. Employment Dept.,* 325 Or 480, 485, 940 P2d 1219 (1997) (adopting the approach used in *PGE v. Bureau of Labor and Industries,* 317 Or 606, 859 P2d 1143 (1993)). In so doing, the court first considers the text and context of the rule, giving words of common usage their "plain, natural and ordinary meaning." *PGE,* 317 Or at 610-11.

Neither ORS 321.358 nor OAR 150-321.358(4) defines ownership. *Webster's Dictionary* defines ownership as "the state, relation, or fact of being an owner: lawful claim or title." *Webster's Third New Int'l Dictionary* 1612, (unabridged ed 2002).

Next, the court considers relevant context, including the Western Oregon forestland statutes and regulations, and the small tract forestland statutes and regulations. None of the Western Oregon forestland statutes or administrative rules requires that ownership be recorded with the county. *See* ORS 321.257 to 321.390; OAR 150-321.257 to OAR 150-321.358.

The small tract forestland program uses the term "common ownership" rather than "one ownership," and defines "common ownership" as "direct ownership by one or more individuals or ownership by a corporation, partnership, association or other entity in which an individual owns a majority interest." ORS 321.700(1). OAR 150-321.700(1) defines "direct ownership" as "ownership of forestland by one or more individuals or control of rights in forestland granted under a real estate contract, trust or written agreement." Under the small tract forestland special assessment program, a taxpayer must notify the county assessor in writing of certain land acquisitions and sales. *See* ORS 321.712(1)(a); *see* ORS 321.719(2). The "owner of small tract forestland shall notify the county assessor * * * [w]hen the owner acquires * * * tax lots that are contiguous to small tract forestland owned or held in common ownership by the owner[.]" ORS

321.712(1), (1)(a). That context demonstrates that the legislature's intent was for the property owner to notify the county assessor of changes in ownership, rather than allow the county assessor to rely solely on deeds recorded with the county.

The plain and ordinary meaning of "ownership" is lawful claim or title. *Webster's Third New Int'l Dictionary* at 1612. Nothing in the statutory or regulatory context suggests that the legislature or the Department of Revenue intended "ownership" to mean record ownership rather than legal ownership. Related statutes concerning the small tract forestland special assessment program demonstrate the legislature's intent that the county assessor should determine ownership based upon written notification supplied by the property owner, rather than rely upon recorded deeds.

2.      *Requirement to notify the County Assessor of owner's current address*

Defendant argues that it is entitled to rely upon its own records – including recorded deeds and address change notifications – to determine ownership. "[R]equir[ing] a county assessor to evaluate legal and equitable title, if and when such title merged, and whether it differs from record title to ascertain Ownership" would be unduly burdensome. (Def's Resp Br at 6.) In support of its position, Defendant notes that property owners must notify the county assessor of their current address: any "person who owns real property located in any county shall notify the county assessor for the county where the property is located of that owner's current address and, within 30 days of the change, shall notify the assessor of any change of address." (*Id.* at 7, citing ORS 308.212(1).)

A property owner may not receive a property tax statement as a consequence of failing to notify the county assessor of an address change and"[t]he failure of a taxpayer to receive the statement described in this section shall not invalidate any assessment, levy, tax, or proceeding to

collect tax." ORS 311.250(2). This case does not concern a property owner's failure to receive a tax statement; Plaintiff received Defendant's disqualification notice. A property owner's failure to notify the county assessor of an address changes is not identified as one of the circumstances requiring the county assessor to remove the property from forestland designation. *See* ORS 321.359(1)(b).

3.     *De novo review of property disqualification from forestland designation*

The Magistrate Division reviews the facts in a case *de novo*. *See* ORS 305.425(1). *De Novo* means that the court may consider information not provided to the county when the county made its determination. *See Brutke v. Marion County Assessor*, TC–MD 001158D, WL 36202989 (Mar 15, 2001) (stating that "[b]ased on the information which has *now* been exchanged between the parties, the property was incorrectly disqualified.") The court acknowledges that Defendant disqualified the subject property from special assessment based on the information available to it. However, Plaintiff has presented new information that, upon termination of the Rosemont Residence Trust in December 2014, RK Rosemont LLC was the current owner of the subject property. In its *de novo* review, the court must determine whether the subject property was properly disqualified based upon the evidence now before the court, not based upon the information known to Defendant at the time it disqualified the subject property.

4.     *Whether the subject property was in "one ownership" with Tax Lot 400*

The county sent its disqualification notice on June 11, 2015. The subject property therefore remained qualified for forestland assessment for the entirety of the 2014-15 tax year. [11] *See* ORS 321.359(1)(a). In this case, the tax year at issue is 2015-16. "To qualify, the area to be

---

[11] "[T]he removal under ORS 321.359(1)(b)(C) * * * shall occur as of the January 1 assessment date *for the year* in which the county assessor discovers that the land is no longer forestland[,]" but "only if notice of removal is mailed prior to August 15 of the tax year for which the removal of the land is asserted." ORS 321.366.

designated must be at least two contiguous acres in one ownership." OAR 150-321.358(4)(3). The requirement *must be* is in the present tense. It is undisputed that at the time of disqualification – June 11, 2015, – RK Rosemont LLC held legal title to both subject property and Tax Lot 400. As of January 1, 2015, both of those properties were owned by RK Rosemont LLC. It is further undisputed that the subject property and Tax Lot 400 are contiguous and, together, total approximately 8.33 acres. Therefore, the subject property together with Tax Lot 400 meets the minimum acreage requirement of "at least two contiguous acres in one ownership." The court finds that the subject property qualified for forestland special assessment for the 2015-16 tax year.

### III.  CONCLUSION

There is no genuine issue as to any material fact. The preponderance of the evidence shows that both the subject property and Tax Lot 400 were owned by RK Rosemont LLC as of January 1, 2015. At the time of Defendant's disqualification on June 11, 2015, the subject property, contiguous with Tax Lot 400, met the minimum acreage requirements for Western Oregon forestland designation. The subject property, therefore, qualified for forestland special assessment for the 2015-16 tax year. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's motion for summary judgment is granted.

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS FURTHER DECIDED that Defendant's motion for summary judgment is denied.

Dated this ___ day of September 2016.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was filed and entered on September 29, 2016.*